**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  09-22577-CIV-UNGARO/SIMONTON**
**CONSENT CASE**

**MARKEL AMERICAN INSURANCE**
**COMPANY,**

      **Plaintiff,**

**v.**

**CSI STRUCTURED CONSULTING CORP.,**
**CARL IOVINE,**

      **Defendants.**

_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

      **THIS CAUSE is before the Court upon Plaintiff's and Defendants' respective Motions**
**for Summary Judgment (DE ## 73, 104).  The Motions are fully briefed (DE ## 107, 112, 117).**
**The Honorable Ursula Ungaro, United States District Judge, has entered an order referring**
**this matter to the undersigned for full disposition in accordance with the Parties' consent**
**(DE ## 15, 16).  After careful consideration of the Parties' filings, the relevant case law, the**
**record as a whole, and after hearing oral argument, the Court hereby GRANTS, in part, the**
**Defendants' Motion for Summary Judgment and DENIES the Plaintiff's Motion for Summary**
**Judgment.**

      **I.**      **BACKGROUND**

      **This matter was initiated when Plaintiff, Markel American Insurance Company**
**("Markel" or "Insurer") filed a one count Complaint for Declaratory Judgment related to a**
**marine insurance policy issued to Defendants CSI Structured Consulting Corp., and Carl**
**Iovine (collectively "Insureds") (DE # 1).  In the Complaint, Markel alleged that it issued a**

marine insurance policy to Defendant CSI Structured Consulting Corp., for a vessel which ultimately sustained significant damage in the waters of New York.  Defendant Carl Iovine's request for coverage under the policy was denied by Markel based upon the Navigation Limits clause in the Policy which, according to Markel, did not provide coverage for the geographic area where the damage to the vessel occurred.  Markel filed the instant suit seeking a declaration that the marine insurance policy did not provide coverage for the Insureds due to the breach of the Navigation Limits clause.

In Answer to the Complaint, the Defendants generally denied the Plaintiff's contentions and asserted a Counterclaim against Markel alleging breach of the insurance contract for Markel's failure to pay amounts due under the policy (DE # 6).  In the Counterclaim, the Defendants requested that the Court determine that the Insureds were entitled to coverage under the policy, and award the Defendants compensatory, direct and consequential damages, as well as reasonable attorney's fees pursuant to Fla. Stat. § 627.428.

After discovery was closed, the Plaintiff Insurer sought leave to file an Amended Complaint (DE # 62). The Court granted the Plaintiff's request and the Plaintiff filed an Amended Complaint asserting an additional cause of action for misrepresentation. Specifically, the Plaintiff alleged that Defendant Iovine misrepresented his prior history of vessel ownership in the original application for insurance coverage.

The Defendants responded to the Amended Complaint generally denying the Plaintiff's allegations and raising several affirmative defenses including estoppel. Specifically, the Defendants contended that Markel should be estopped from raising a

2

misrepresentation cause of action because Markel, through the acts of its agents, accepted Mr. Iovine's application without the complete information regarding Mr. Iovine's prior vessel ownership history (DE # 69).

A little more than three months after filing the Amended Complaint, the Plaintiff filed a Notice of Voluntary Dismissal of the misrepresentation count  (DE # 72). The Defendants did not respond directly to the Plaintiff's Notice of Voluntary Dismissal and did not seek to strike that filing.

Both Parties have now moved for summary judgment on the issue of the interpretation of the Navigational Limits clause in the insurance policy. In addition, the Defendants have moved for summary judgment on the misrepresentation count advanced in the Plaintiff's Amended Complaint.

II.    UNDISPUTED FACTS

For purposes of resolving the pending Motions for Summary Judgment, both Parties agree that no material facts are in dispute, and both agree that the present case boils down to how the Navigational Limits provision of the insurance policy must be interpreted as a matter of law (DE # 120).  The following underlying facts which gave rise to this action are not in dispute:[1]

In May of 2009, Defendant CSI Structured Consulting, LLC and Defendant Carl Iovine, the principal owner of Defendant CSI Structured Consulting, LLC, purchased a  2005 38-foot Donzi ZF power vessel.  In late May or early June of 2009, Mr. Iovine contacted an insurance

---

[1]  The Court only relies on those facts submitted by the Parties in their respective Motions for Summary Judgment which were not disputed by the other Party (DE ## 74, 105, 106, 107, 111).

broker in Pompano Beach to secure an insurance quote for that vessel.  After speaking with Mr. Iovine, the broker solicited a quote for Markel insurance from Global Marine Insurance ("Global"), an underwriting agent authorized to issue marine insurance policies on behalf of Markel American Insurance.  At that time, Mr. Iovine was residing in Miami Beach, Florida. On June 12, 2009, Global provided an insurance binder to the broker and the broker forwarded an insurance application generated from Global's computer system to Mr. Iovine. Mr. Iovine reviewed the insurance quote and completed and signed the application.  Markel thereafter issued a policy of marine insurance affording Hull and Machinery coverage for the subject vessel in the amount of $100,000.00. The policy contained a Navigational Limits provision limiting coverage of the subject boat to the following area:

> U.S. Atlantic and Gulf of Mexico coastwise and inland waters between Jacksonville, FL and Pensacola, FL, including the Bahamas

(DE # 62-2).

On July 24, 2009, the subject vessel sustained extensive damage in the Sag Harbor, New York area on the Atlantic coast, resulting in a constructive total loss.  The Insured sought coverage under the subject policy and the Insurer denied coverage. The Insurer then filed the present declaratory judgment action seeking a declaration that, among other things, the Defendants' breach of the Navigational Limits clause voided coverage under the policy (DE ## 1 at 9, 62 at 12).

III.    THE POSITIONS OF THE PARTIES

A.  Plaintiff's Motion for Summary Judgment

The Insurer has filed a Motion for Summary Judgment contending that because the policy at issue did not provide coverage for the subject vessel in New York, where the

4

damage to the boat occurred, the Defendants are not entitled to coverage under that policy (DE ## 73, 74 and 75).  The Plaintiff contends that the navigational limits of the policy clearly and unambiguously only provided coverage for Florida waters between Jacksonville and Pensacola, and the Bahamas.  The Plaintiff further contends that the Defendants' reading of the policy to provide coverage for the entire U.S. Atlantic coast is unreasonable.

For purposes of the Motion for Summary Judgment, the Plaintiff concedes that Defendant Carl Iovine told the insurance broker that he intended to operate the vessel in New York, prior to the broker purchasing the insurance policy.  Markel contends that despite the insurance agent's knowledge of the Defendant's intent to travel to New York in the vessel, the agent selected the wrong insurance coverage when he requested the quote from Global.

In support of this contention, Markel has submitted the Affidavit of Thomas Conroy, the Managing Director of Markel's marine insurance programs (DE # 76).  In the Affidavit, Mr. Conroy asserts that when Mr. Iovine's insurance agent visited the Global website, he selected "Atlantic Florida" coverage which resulted in Navigational Limits confining operation of the vessel to "U.S. Atlantic and Gulf of Mexico coastwise and inland waters between Jacksonville, Florida and Pensacola, Florida, including the Bahamas." (DE # 76 at 2-3).  Mr. Conroy contends that the agent could have selected other navigational limits on the Global website that would have provided coverage for the vessel to travel to New York.  Specifically, he suggests that the broker could have chosen "Atlantic Full" coverage which would have provided coverage, as follows: "U.S. Atlantic coastwise and inland waters between Eastport, Maine and Key West, Florida, including the Bahamas, and Turks and

Caicos Islands. The boat must not be sought (sic) of Cumberland Island, GA from 06/01 to 11/01."

Finally, Plaintiff contends that it was the Insureds' broker who chose the wrong coverage for the Defendants, and thus contends that any claims that the Insureds have should be raised against the broker, who acted as their agent in selecting the marine insurance policy.

## B. Defendants' Motion for Summary Judgment

The Defendants have also moved for summary judgment contending, *inter alia*, that the language contained in the Navigational Limits provision of the insurance policy provided coverage for the damages sustained by the vessel in New York (DE ## 104, 105). According to the Defendants, when Defendant Carl Iovine sought coverage for the vessel at issue, he intended to obtain a policy that would provide coverage in both New York and Florida, as well as the Bahamas (DE # 104 at 1-2). As such, when he reviewed the policy which included the language "U.S. Atlantic and Gulf of Mexico coastwise and inland waters between Jacksonville, FL and Pensacola, FL, including the Bahamas," he reasonably believed that the policy provided coverage in New York and Florida. The Defendants thus contend that the Navigational Policy Limitation expressly provides for four distinct areas of coverage: 1) the U.S. Atlantic Coast; 2) the Gulf of Mexico Coast; 3) inland waters between Jacksonville, Florida and Pensacola, Florida; and 4) the Bahamas.

In the alternative, the Defendants assert that the language of the Navigational Limits provision is ambiguous and therefore must be construed against the Plaintiff, the insurer. In this regard, the Defendants assert that because both Mr. Iovine's reading of the

6

navigational limitation provision to provide coverage in the State of New York is a reasonable reading of that clause, and assuming arguendo that the Plaintiff's reading of the clause is also reasonable, the clause is subject to two different competing interpretations and thus is ambiguous.  Further, the Defendants contend that, under Florida law, where one reading of an insurance clause provides for coverage, and another reading provides for exclusion, a court must interpret the clause in favor of coverage.

The Defendants also contend that Markel, as the insurer, could have drafted the Navigational Limitation provision with more exact language to make it clear that Markel intended for the coverage to be limited to the Florida coast.  In support of this assertion, the Defendants suggest that the Navigational Limits provision could have been drafted by Markel to read, "Florida Atlantic and Gulf of Mexico, coastwise and inland waters between Jacksonville, Florida and Pensacola, Florida, including the Bahamas," rather than identifying the coast as "U.S." (DE # 104 at 12).

The Defendants also seek summary judgment on Count II of Markel's Amended Complaint which alleged that Defendant Carl Iovine misrepresented his history of vessel ownership in his application for insurance.  The Defendants contend that after the Plaintiff belatedly added this second cause of action and unilaterally canceled the deposition of its corporate representative, the Plaintiff improperly filed a Notice of Voluntary Dismissal.  The Defendants argue that once a responsive pleading is filed pursuant to Federal Rule of Civil Procedure 41, a party must obtain court approval prior to dismissing a count, which the Plaintiff failed to do, and further contend that the Plaintiff improperly dismissed only one count of the action as opposed to the entire action. The Defendants assert that they are

7

therefore entitled to summary judgment on Count II, and further assert that they are entitled to recover reasonable attorney's fees arising from litigating that Count.

In its response, the Plaintiff counters that unless the Court reads the policy as providing coverage along the entire Atlantic Coast, summary judgment should be granted for the Plaintiff, rather than the Defendants (DE # 112). The Plaintiff asserts that the language of the Navigational Limits Warranty was clear and ambiguous and was the limitation selected by Mr. Iovine's insurance broker, and again notes that the insurance broker incorrectly selected "Atlantic Florida" instead of "Atlantic Full."

The Plaintiff characterizes Mr. Iovine's contention that the policy covered four separate bodies of water as being "absurd and outrageous" (DE # 112 at 7), and maintains that there is only one reasonable interpretation of the Navigational Limits provision, which limits operation of the insured vessel in the coastal and inland waters of the Atlantic Ocean and the Gulf of Mexico from Jacksonville, Florida to Pensacola, Florida and to and from the Bahamas. The Plaintiff argues that because there is no punctuation after the word "coastwise" and before the words "inland waters", that coverage for the "U.S. Atlantic Coastwise and Gulf of Mexico" is limited to the points between Jacksonville and Pensacola. The Plaintiff further asserts that Mr. Iovine's intention to secure additional coverage in the State of New York was never communicated to Markel.

In response to the Defendants' contention that the Plaintiff improperly dismissed the misrepresentation count, the Plaintiff contends that the allegation of misrepresentation was first raised by Mr. Iovine's own deposition testimony wherein he stated, in contradiction to the information contained on his policy application, that he had not previously owned a sea

8

vessel. Due to this admission, the Plaintiff contends that it added a count of misrepresentation, which was abandoned by the Plaintiff once Mr. Iovine provided documentary evidence demonstrating that he had, in fact, previously owned a Sea Doo-type of vessel. As such, the Plaintiff asserts that it properly dismissed the misrepresentation count, and maintains that the issue is no longer before the Court, thereby precluding an entry of summary judgment on that count.

### C. <u>Oral Argument on Summary Judgment Motions</u>

Pursuant to the request by the Defendants, the undersigned held oral arguments on the Motions for Summary Judgment (DE ## 113, 129). At the hearing, the Parties agreed that the construction of a clause in an insurance contract is controlled by Florida Law but that federal admiralty law determines the effect of a breach of navigational limits clause under an admiralty insurance policy. In addition, both Parties agreed that the material facts were not in dispute, that the case could appropriately be resolved by summary judgment, and that no trial was necessary regardless of who prevailed on summary judgment. In its oral argument, the Plaintiff emphasized that the limitations on Mr. Iovine's coverage flowed from the coverage selected by his insurance broker. The Plaintiff cited to several cases wherein courts that considered policy language similar to the language in this case concluded that coverage did not extend for insureds who ventured beyond the geographical limits set forth in the policy. Further, the Plaintiff argued that the Defendants are improperly seeking to have the Court alter the meaning of the Navigational Limits provision by adding punctuation that is not in the clause. In addition, the Plaintiff explained that the letters "U.S." in the navigational limits provision clarifies that the coverage is not for Canadian waters, but rather

United States waters.

In response, the Defendants contended that the issue in this case is whether Defendant Iovine's interpretation of the policy is reasonable, particularly given the coverage that Mr. Iovine sought for the vessel.  In addition, the Defendants asserted that the cases cited by the Plaintiff were distinguishable because they dealt with two linear points on the coastline which unambiguously provided coverage for damages in water that occurred between those two points.  Defendants contend that in contrast to those cases, in this case, the coverage for the two points of Jacksonville and Pensacola, Florida could be only for inland waters, based upon their location.  Thus, the Defendants again emphasized that the policy at issue is ambiguous and should therefore be construed to afford coverage.

IV.    APPLICABLE LAW

A. <u>Summary Judgment Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S.  317 (1986).  The court's focus in reviewing a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations and

10

citation omitted).  The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen*, 121 F.3d, at 646.  However, a party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (opining "conclusory allegations without specific supporting facts have no probative value").  Finally, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008) citing *TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005).

    As the Parties' present dispute relates solely to how the Navigational Limits provision of the subject insurance policy must be interpreted as a matter of law, and no material facts remain in dispute (DE #120 at 4), the issues raised in the Parties' respective Motions for Summary Judgment (DE ## 73, 104) may be appropriately determined by this Court.  *James River Ins. Co. v. Ground Down Eng'g Inc.,* 540 F. 3d 1270, 1274 (11th Cir. 2008) (finding that under Florida law, the interpretation of an insurance contract is a question of law).

### B.  Interpretation of Insurance Contracts Under Florida Law

    The Parties have agreed that Florida law applies to the determination of whether an ambiguity exists in the navigational limits clause in this case.[2]  When determining whether

---

[2] The general rule regarding whether to apply federal or state law in a marine insurance contract dispute is that, unless there is a federally established admiralty law, state law should apply. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310,

coverage exists under an insurance contract, the language of the policy itself is the most important factor in the court's analysis. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,* 913 So. 2d 528, 537 (Fla. 2005).  When interpreting a policy, courts are directed to construe the contract in accordance with its "plain language." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 165 (Fla. 2003).  Ambiguities in the policy language are "construed against the insurer and in favor of coverage." *Taurus Holdings, Inc.,* 913 So. 2d at 532.  Ambiguity exists if "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* (citations and quotations omitted).  Thus, where an insurance contract is actually ambiguous (not merely complex), and where a reasonable interpretation providing coverage exists, courts are directed to construe the subject insurance contract as providing coverage. *Id.; accord State Farm Mutual Automobile Ins. Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986).

---

316 (1955).  In the absence of a federal admiralty rule, the law of the state in which the contract was formed determines the rights of the parties. *Id.* In this case, both Florida law and federal maritime law counsel that an ambiguous provision in a maritime contract is interpreted against the drafter. *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1191 n.19. (11th Cir. 2009). *See, e.g., Edward Leasing Corp., v. Uhlig & Assoc. Inc., et al.*, 785 F.2d 877, 889 (11th Cir. 1986) ("The traditional rule of construction in admiralty cases is to construe the contract language most strongly against the drafter...."); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter."). Because there is no conflict between state law and maritime law on this issue, there is no need to determine which law applies unlike when a conflict between the two laws exists. *See Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986).  The undersigned, therefore, looks to the laws of Florida to determine whether an ambiguity exists in the insurance clause at issue in this case.  The effect of such a breach, however, would be determined under federal admiralty law, which provides that an insured is not entitled to coverage where there is a breach of the navigational limits warranty, even if compliance with the warranty would not have avoided the loss. *Lexington Ins. Co. v. Cooke's Seafood*, 835 F. 2d 1364, 1366 (11th Cir. 1988).

12

Similarly, in interpreting a contract under Florida law, courts should "give effect to the plain language of contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pacific Farms, L.L.C.*, 305 F.3d 1228, 1246 (11th Cir. 2002); *Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade County,* 65 So. 2d 729, 731 (Fla. 1953).  The words utilized in an insurance policy are to be given their plain and ordinary meaning.  *Fenby v. M/V Three D of Guernsey*, 217 Fed. Appx. 846, 847 (11th Cir. 2007) citing *Rigby v. Underwriters at Lloyd's, London*, 907 So. 2d 1187, 1188 n.1 (Fla. Dist. Ct. App. 2005).  Further, a Court must read the contract to give meaning to each and every word it contains, and avoid treating a word as redundant or mere surplusage "if any meaning, reasonable and consistent with other parts, can be given to it." *Cantiere Nautico Cranchi, S.P.A. v. Luxury Marine Group, LLC*, No. 09-60883, 2009 WL 3538722, at *3 (S.D. Fla. Oct. 28, 2009) *citing Roberts v. Sarros*, 920 So. 2d 193, 196 (Fl. Dist. Ct. App. 2006) (citations omitted).  With these principles in mind, the undersigned turns to the arguments raised by the Parties.

    V.    <u>ANALYSIS</u>

        A. <u>Navigational Limit Warranty</u>

As stated above, the Court's task on this issue is relatively straightforward. The undersigned must determine whether the Navigational Limits clause either expressly provides coverage to the Insured, or is susceptible to more than one reasonable interpretation and is, therefore, ambiguous.  Under either scenario, the Defendants would be entitled to coverage under the policy. Therefore, if the policy is ambiguous, the Court need not determine whether the policy expressly provides coverage, because any ambiguity must be construed against the drafter, and in favor of the Insureds.

For the following reasons, the Court concludes that the Navigational Limit clause at issue is ambiguous.  First, the Defendants urge that the phrase:

> U.S. Atlantic and Gulf of Mexico coastwise and inland waters between Jacksonville, Florida and Pensacola, Florida, including the Bahamas

provides coverage for all of the U.S. Atlantic coastwise, the Gulf of Mexico coastwise, the inland waters between Jacksonville, Florida and Pensacola, Florida, and the Bahamas. Markel, on the other hand, argues that such an interpretation is not reasonable because there "are no stray or unaccounted for commas in the provision."  (DE # 75 at 11).  In other words, Markel contends that coverage under the policy is confined to both the inland and coastal waters between Jacksonville, Florida and Pensacola, Florida, and the Bahamas.  However, the absence of a comma after the word "coastwise" in the Navigational Limits clause does not necessarily mean that the phrase "between Jacksonville, Fl and Pensacola, Fl," which immediately follows the words "inland waters" also serves as a limitation on the words "U.S. Atlantic."  There is no reason why the phrase "between Jacksonville, Florida and Pensacola, Florida" must extend beyond "inland waters."  Rather, the word "coastwise" can reasonably be construed as the only descriptor for the "U.S. Atlantic" and the "Gulf of Mexico".  Under this construction, coverage is available for the entire United States Atlantic coast.  The Court finds the Defendants' interpretation of the Navigational Limit in this manner reasonable.

In *Zautner v. Liberty Mutual Ins. Co.*, 382 So. 2d 106 (Fla. Dist. Ct. App. 1980), the Court reached a similar conclusion in reversing and remanding a trial court's grant of summary judgment in favor of an insurer.  In that case, the parties disagreed as to whether the phrase "newly acquired outboard motors or boats" limited coverage to both "outboard motors" and

14

"outboard boats" or, only to newly acquired "outboard motors" with no limit on the type of newly acquired boat, whether inboard or outboard.  In reaching its conclusion that judgment should have been entered in favor of the insured, the Court stated,

> Simply stated, it is at least uncertain as to whether the word "outboard," as used in the term "outboard motors or boats," modifies only the word "motors" to which it is juxtaposed, or modifies the word "boats" as well. If the company desired to insure only newly acquired "outboard boats," it could and should have made that clear by using the term "outboard motors or outboard boats," or indeed, the very expression, "outboard boats and motors" actually contained in another part of the same policy. The use of a different term is itself some indication of a more expansive "newly acquired" insuring agreement...In any event, it is surely not an unreasonable construction of the provision in question that it insures all newly acquired boats or newly acquired "outboard motors."

*Id.* at 107. (citation omitted).

Similarly, in *Eagle Star Ins. Co. Ltd. of London, England*, 247 So. 2d 514 (Fla. Dist. Ct. App. 1971), a reviewing court affirmed a trial court's entry of judgment in favor of an insured following a bench trial related to a vessel that sunk at the main axis of the gulf stream, about twenty miles from Miami. The insured in that case sought coverage pursuant to a policy which included a navigational warranty clause which stated the vessel's coverage would be "confined to inland and coastal waters of the State of Florida." *Id.* at 515. The insurer argued that the navigational warranty language meant that the vessel would be covered only in waters within the boundaries of the State of Florida.  The reviewing court, however, found the navigational warranty language to be ambiguous, and stated, "The instant policy does not expressly limit navigation to the state boundaries. If the [insurer] had wished to limit navigation to the state boundaries, it could have done so in clear, unambiguous language."

*Id.*[3]

Finally, in *Infinity Yachts, Inc. v. St. Paul Fire & Marine Ins. Co.*, 655 So. 2d 1259 (Fla. Dist. Ct. App. 1995), a reviewing court reversed and remanded a trial court's entry of summary judgment on behalf of an insurer where the parties disagreed as to the meaning of the phrase "to be reported" in an insurance policy.  The insured argued that the phrase "to be reported" was a reference to the value of vessels reported after the time the policy took effect.  The insurer, on the other hand, argued that the insured maximum value of the vessels was limited to the initial values provided by the insured on a list submitted for an unrelated policy.  In addition, although the Court concluded that the policy was not ambiguous as to the express coverage it provided, the Court noted that to the extent the phrase "to be reported" might be seen as ambiguous, that ambiguity had to be resolved in favor of the insured.  In reaching this determination, the Court noted that the insurance company could have written the policy more clearly and stated, "[The Insurer] bears responsibility for the wording it selected and used." *Id.* at 1262.  It also bears mentioning that the reviewing Court noted that the policy form used to insure the insured's vessels was not designed to insure multiple vessels but nonetheless was completed in a way to indicate that multiple vessels were to be covered, and thus provided coverage for all of the insured's vessels listed on that form.

In the case at bar, like in *Zautner*, the navigational limits clause is at least uncertain

---

[3]  The Court in *Eagle Star* also noted that the well-settled rule is that where a warranty in a marine hull insurance policy would work a great hardship, policy language will be construed quite strictly in the assured's favor. *Id.* at 515.  The undersigned does not cite to *Eagle Star* for this proposition but rather for determining that the language in the navigational limit in the case at bar is ambiguous.

as to whether the descriptive points "between" Jacksonville and Pensacola refer only to the "inland waters", or the "coastwise" waters, as well. Clearly, Markel, as the drafter of the language, could have written the limitation between Jacksonville and Pensacola, separately, for both coastal waters and inland waters.  Similarly, akin to *Eagle Star*, if Markel intended to restrict travel only to Florida and the Bahamas, it could have easily written the policy to include the word "Florida" to further narrow the coverage coastwise, but chose not to do so. Rather, instead of using clear, unambiguous language, Markel chose to use language which is susceptible to more than one reasonable interpretation, including the interpretation advanced by Defendant Carl Iovine.  Thus, Markel bears responsibility for the wording it selected and used.

Moreover, it is arguable whether it is reasonable to read the phrase in the manner suggested by the Plaintiff because such a reading would render several of the words in that clause superfluous.  Under the Plaintiff's interpretation, it is unclear what the letters "U.S." are defining because, if the policy only covers the coast of Florida and the inland waters in the State of Florida, there is no need for the "U.S." descriptor as presumably all coastal and inland waters within the state of Florida are in the United States.  More likely, as acknowledged by Counsel for the Plaintiff at the oral argument, the letters "U.S." distinguish the United States Atlantic Coast from the Canadian Atlantic coast, a distinction not necessary under the Plaintiff's reading of the Navigational Limitation clause.  This point is bolstered by the Plaintiff's own summary of the policy's coverage in its Motion for Summary Judgment as follows: "Operation of the insured vessel is permitted in the coastal and inland waters of the Atlantic Ocean and the Gulf of Mexico from Jacksonville, Florida to Pensacola,

17

Florida." (DE # 112 at 8-9).  Nowhere in the Plaintiff's description of the geographic area covered under the policy does "U.S." or the words "United States" appear.  The Plaintiff's omission of "U.S," from its description of the policy coverage is appropriate because, under the Plaintiff's reading of the policy, "U.S" does not provide any additional geographical information, rather "U.S." is superfluous.

Similarly, even the word "Atlantic" under the Plaintiff's interpretation, likely is not necessary because if the phrase "between Jacksonville, Florida and Pensacola, Florida" describes the only coastwise and inland waters covered, then the only coasts covered under the policy would necessarily be the Atlantic Coast and the Gulf of Mexico.

This same analysis was applied by the First Circuit Court of Appeals in *St. Paul Fire & Marine Ins. Co. v. Knickerbocker Steam Towage Co.*, 93 F. 931 (1st Cir. 1899), wherein the Court examined a marine insurance policy that provided coverage for incidents that occurred in various waters including "all inland and Atlantic Coast waters of the United States." *Id.* at 934.  In rejecting the insurer's argument that coverage was necessarily limited to those coast waters that could be considered inland, the Court observed that such a reading would render the words "Atlantic Coast" as "surplusage." *Id.*

It is for this same reason that the cases relied upon by Markel are distinguishable from the instant case.  The Plaintiff asserts that in *Northern Assur. Co. v. America of D'Onofrio*, No. 08-00976, 2009 WL 1437800, at *1 (E.D.N.Y. May 18, 2009), the Court, in examining the exact same contentions being made by the Defendants in this case, determined that the language in the navigational limit warranty in that case was clear and unambiguous, and did not provide for coverage outside of coastal and inland waters in New

18

York and New Jersey.  The Plaintiff, therefore, contends that the outcome in this case must be the same as that in *D'Onofrio*.  However, the Plaintiff's contention is without merit. Leaving aside the fact that the holding in *D'Onofrio* is not binding upon the undersigned, the navigational limitation provision at issue in *D'Onofrio* was not the same as the one at issue in this case.  Rather, the clause in *D'Onofrio* provided,

> It is a condition of this Policy that the vessel shall be confined to Atlantic Coastwise and Inland waters of New York and New Jersey.  In no event shall the vessel be navigable beyond the limits permitted by the United States Coast Guard.  If there is a failure to comply with this condition there is no coverage under this Policy. (Navigation Warranty.)

*Id.* at *3.  The Court, in rejecting the insured's contention that the Navigation Warranty was ambiguous, noted that the clause stated that the policy was "confined to Atlantic Coastwise" and observed that in order to provide coverage to the insured, the clause would have to be re-written to state "confined to Atlantic Coastwise of the United States." *Id.* at *4.

In contrast, as stated above, the clause in this case *does* include "U.S." in its description, and the Court therefore need not "re-write" that clause to include a reference to the United States.  In addition, unlike the clause in *D'Onofrio*, which confines the coverage to the waters of the states of New Jersey and New York, the policy in this case does not specify that the coverage is confined to the waters of the State of Florida.

Finally, Markel's assertion that the broker/agent who selected the Navigational Limits for the vessel owner's policy should have selected the "Atlantic Full" coverage instead of the coverage chosen is illogical under the facts of this case.[4]  The Plaintiff asserts that the

---

[4] The undersigned has determined that the terms of the Navigational Limit provision are ambiguous on their face without having to resort to extraneous evidence.  However,

"Atlantic Full" selection would have provided the following coverage:

> U.S. Atlantic coastwise and inland waters between Eastport, Maine and Key West, Florida, including the Bahamas, and Turks and Caicos Islands. The boat must not be sought (sic) of Cumberland Island, GA from 06/01 to 11/01.

However, the Plaintiff concedes that in late May or June, Carl Iovine sought to obtain insurance coverage for the vessel while he resided in a rented apartment in Miami Beach, Florida, and informed the agent "that the vessel was going to be moored in Miami Beach for some time." (DE # 74 at 4-5).  Thus, if the alternative coverage suggested by Markel had been purchased, Mr. Iovine would not have had coverage for the vessel so long as it was south of Cumberland Island between June and November, and thus would not have had coverage while the boat was moored at Miami Beach, for the first  seven months of the policy.

Markel's assertion in this regard is even more perplexing considering the affidavit of Thomas E. Conroy, which was submitted in support of the Plaintiff's Motion for Summary Judgment.  In that Affidavit, Mr. Conroy quotes the above "Atlantic Full" provision and states, "Clearly selection of the option of  'Atlantic Full' would have resulted in issuance of a Quote specifying that operation of the insured vessel was permitted all along the entire East Coast and Gulf of the United States, from Eastport, Maine to Key West, Florida." It is difficult to ascertain how the geographic area quoted by Mr. Conroy in the "Atlantic Full" coverage would provide geographic coverage for the "Gulf of the United States."

Similarly, Markel's suggestion that the insurance broker should have selected

---

because the Plaintiff has presented several extraneous facts to further support its argument that the policy is not ambiguous, the undersigned has examined those arguments and refutes the Plaintiff's conclusions on those points.

coverage from the "Atlantic Full" menu rather than the "Atlantic Florida" menu does not provide additional guidance in this area.  This is so because the "Atlantic Full" coverage does not provide coverage for the entire Florida Coast, which includes the Gulf of Mexico.  Indeed, the Plaintiff does not even address this issue but rather states that choosing "Atlantic Full" would have provided Mr. Iovine with coverage for the operation of the vessel in waters "all up and down the entire East Coast of the United States." (DE # 112 at 8).  It is unclear how Mr. Iovine would have obtained coverage for the west coast of Florida with the coverage suggested by the Plaintiff.

Simply put, the Navigational Limits clause at issue is ambiguous and susceptible to more than one meaning, and thus must be construed against Markel.  In addition, the Defendants' reading of the Navigational Limits clause in the case at bar is reasonable, and thus the Defendants are entitled to coverage.[5]

### B. Plaintiff's Dismissal of Misrepresentation Count

As stated above, the Defendants also seek to have summary judgment entered on Count II, the alleged misrepresentation made by Mr. Iovine on the insurance application.  However, other than describing the Plaintiff's conduct in amending the Complaint to add an additional count for misrepresentation and in dismissing that same count, the Defendants

---

[5]  The undersigned need not reach the issue of whether the Insureds' claim should be made against the broker who selected the particular coverage because the undersigned concludes that the Navigational Limits, and thereby the policy coverage, is ambiguous and therefore provides coverage to the Insured, regardless of any of the broker's purported errors. Similarly, the testimony contained in the deposition of Mark Gonnelli, Ronald Bradley, II, Carl Iovine, Thomas Conroy and Michael Abbott (DE # 80) has not been set forth in this opinion or otherwise discussed since that testimony does not affect the disposition of this case.

have not argued any law or facts on the substance of the misrepresentation count.   The Defendants have, therefore, failed to meet their burden of demonstrating that they are entitled to judgment as a matter of law.   Accordingly, the Defendants' Motion for Summary Judgment and attorney's fees related to defending against Count II is denied.

VI.     CONCLUSION

Accordingly, based upon the papers submitted by the Parties and the oral arguments presented on the Summary Judgment Motions, as well as, a review of the record as a whole, it is

ORDERED AND ADJUDGED that  Plaintiff's Motion for Summary Judgment (DE # 73) is DENIED.  It is further

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment (DE # 104) is GRANTED, in part and DENIED, in part.  To the extent that the Defendants seek Summary Judgment on the issue of whether they are entitled to coverage under the insurance policy at issue, the Motion is granted.  The Court will enter a Final Judgment on behalf of Defendants CSI Structured Consulting Corp., and Carl Iovine, by separate order. To the extent that the Defendants seek Summary Judgment on Count II of the Plaintiff's Complaint related to misrepresentation, for the reasons stated above, the Motion is denied.[6] It is further

ORDERED AND ADJUDGED that the Defendant's Motion to Strike Statement of

_____

[6] To the extent that the Defendants' Motion can be construed to seek summary judgment as to any issues other than the meaning of the navigational limits warranty, those issues have not been adequately briefed.

Material Facts (DE # 106) is **DENIED;** and Plaintiff's Motion for Order permitting filing of Statement of Facts in Support of Summary Judgment (DE # 113) is **GRANTED.** It is further

**ORDERED AND ADJUDGED** that, pursuant to the Plaintiff's Notice of Voluntary Dismissal of Count II of the Plaintiff's Complaint, Count II of the Amended Complaint is dismissed. It is further

**ORDERED AND ADJUDGED** that on or before April 30, 2012, the Parties shall confer regarding the need for further proceedings before the entry of a Final Judgment in favor of Defendants and closing this case; and, shall file a Joint Notice with the Court which sets forth their proposals for resolving any remaining issues. The Court intends to reserve jurisdiction in it Final Judgment for the purpose of considering a timely filed Motion for Attorney's Fees and Costs pursuant to Local Rule 7.3. It is further

**ORDERED AND ADJUDGED** that all pending Motions are **DENIED**, as moot.

**DONE AND ORDERED** in chambers in Miami, Florida, on March 26, 2012.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
      All Counsel of Record via CM/ECF